IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 22-cr-00251-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.    ESVIN IVAN CALLES-CORRALES,

    Defendant.

## PLEA AGREEMENT

The United States of America (the government), by and through Bradley W. Giles, Assistant United States Attorney for the District of Colorado, and the defendant, ESVIN IVAN CALLES-CORRALES, personally and by counsel, John Tatum, Esq., submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I.    AGREEMENT

**A. Defendant's Plea of Guilty:**

The defendant agrees to:

(1)    Plead guilty to **Counts 5** and **6** of the Superseding Indictment. Count 5 alleges a violation of **21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)** [Distribution and Possession of Methamphetamine with the Intent to Distribute – 50 grams and more (actual)]. Count 6 alleges a violation of **21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi)** [Distribution and Possession of a mixture and substance containing a detectable

1

Court Exhibit

1

amount of N-phenyl-N-[1-(2-phenylethyl-4-piperidinyl] propanamide (fentanyl) with the Intent to Distribute – 40 grams and more];

(2) waive certain appellate and collateral attack rights, as explained below; and

(3) agrees not to contest forfeiture as more fully described below.

### B. Government's Obligations:

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). In exchange for the defendant's guilty pleas, the government agrees not to file additional charges in relation to the relevant conduct as outlined within this agreement, and to dismiss the remaining charge (Count 1) against the defendant at the time of sentencing. Moreover, the United States agrees to cap its sentencing recommendation at the advisory guideline range for a Total Adjusted Offense Level of 31, combined with the defendant's criminal history category as determined by the Court. The parties understand that, should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, reinstate all charges in the indictment and/or file a superseding indictment. The parties further understand that this agreement is not binding on the Court.

Provided the defendant does not engage in prohibited conduct or otherwise implicate U.S.S.G. §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b).

## C. Defendant's Waiver of Appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

   (1)   the sentence exceeds the maximum sentence provided in the statutes of conviction, 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(B)(vi);

   (2)   the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that apply for the defendant's criminal history (as determined by the district court) at a total offense level of 31; or

   (3)   the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

   (1)   the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

   (2)   the defendant was deprived of the effective assistance of counsel; or

   (3)   the defendant was prejudiced by prosecutorial misconduct.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the

3

defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

### Restitution:

The defendant agrees to pay restitution as ordered by the Court. At present, the parties do not anticipate a request for restitution.

### Forfeiture of assets:

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere. The assets to be forfeited include any and all firearms and ammunition involved in the commission of the offense, as well as $19,881 in United States currency. This money was seized from the defendant and various co-conspirators during the course of the investigation. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture

4

action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him if notice is not sent within the prescribed time frames. The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the above-described property, which was seized from the defendant and/or his co-defendant for evidentiary purposes, and which is currently in the custody or control of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and/or the United States Postal Inspection Service (USPIS), was lawfully seized and that it is evidence, contraband, or fruits of the crimes (or money co-mingled therewith) to which the defendant is pleading guilty. The defendant relinquishes and abandons all claims, title, and interest the defendant has in such property with the understanding and consent that the ATF may dispose of the property without further obligations.

## II. ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of the charges to which the defendant is pleading guilty are as follows:

**Count 5: 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) – Distribution and Possession of methamphetamine with Intent to Distribute (50 grams and more of actual methamphetamine)**

5

*First:* The Defendant knowingly or intentionally possessed a controlled substance as charged, to wit: 50 grams and more of methamphetamine (actual), a Schedule II controlled substance;

*Second:* The substance was in fact methamphetamine; and

*Third:* The Defendant possessed the substance with the intent to distribute it.

(10th Circuit Pattern Crim. Jury Instruction §2.85) (*as modified*).

### Count 6: 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi) – Distribution and Possession of Fentanyl with Intent to Distribute (40 grams and more)

*First:* The Defendant knowingly or intentionally possessed a controlled substance as charged, to wit: 40 grams and more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl-4-piperidinyl] propanamide (fentanyl), a Schedule II controlled substance;

*Second:* The substance was in fact fentanyl; and

*Third:* The Defendant possessed the substance with the intent to distribute it.

(10th Circuit Pattern Crim. Jury Instruction §2.85) (*as modified*).

### III. STATUTORY MAXIMUM SENTENCE

The maximum penalties for a violation of Count 5 the Superseding Indictment are: not less than 10 years and not more than a lifetime of imprisonment; not less than 5 years and up to a lifetime of supervised release; a maximum fine of $10,000,000; a $100 mandatory victim's fund assessment fee; and restitution [none is anticipated].

The maximum penalties for a violation of Count 6 the Superseding Indictment are: not less than 5 years and not more than 40 years' imprisonment; not less than 4 years and up to a lifetime of supervised release; a maximum fine of $5,000,000; a $100 mandatory victim's fund assessment fee; and restitution [none is anticipated].

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V. STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision. The parties stipulate that the following facts are true and correct:

In October of 2022, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began an investigation into an armed narcotics trafficking criminal street gang in the Denver, Colorado area, stemming from information obtained from a Source of Information (SOI). The SOI informed investigators of a violent criminal street gang distributing narcotics in the area of North Broadway and E. Colfax Ave. in Denver, Colorado. The investigation revealed that Xavier Drew and his criminal associates were engaged in the purchase and distribution of: methamphetamine, fentanyl and firearms within the District of Colorado.

On December 1, 2022, the U.S. Postal Inspection Service (USPIS) became aware of United States Postal Service (USPS) Priority Mail Parcel 9505 5118 0548 2335 4709 86 (the Subject Parcel.) The Subject Parcel was addressed to "Xavier Drew, 2367 S Blackhawk, St apt 140, Aurora, Co 80014" and had the return address of "Rogur Gonzalez 1110 n Dycen Pd, Avanbuh 85232" (the Avanbuh address). This address is within the State and District of Colorado.

The USPIS obtained a search warrant for the Subject Parcel. When the warrant was executed, it was found that the parcel contained a children's Mickey-Mouse Interactive Music Mat toy. That toy concealed a transparent vacuum-sealed bag with 444.55 grams of a mixture and substance containing methamphetamine. Subsequent laboratory quantitative analysis

7

revealed that the methamphetamine had a purity of $\pm$ 3%, resulting in a total of **337.86 grams of methamphetamine (actual)**, a schedule II controlled substance (Exhibit 5).

The parcel also contained a transparent latex glove containing numerous pills in a variety of colors with imprints of "M" and "30" on their respective sides. The total net weight of these pills was **109.87 grams** (Exhibit 6). Subsequent lab testing confirmed that these tablets contained fentanyl, a Schedule II controlled substance.

The Subject Parcel's packaging was submitted for a laboratory latent print examination. The Micky Mouse toy's packaging was found to contain two latent prints for Esvin Ivan CALLES-CORRALES.

Postal Inspectors reviewed T-Mobile business records for Xavier Drew's telephone number (XXX) XXX-0752. The review period started on November 29, 2022, and ended on December 10, 2022. Inspectors noted that there were 81 records of communication between the 0752 number and (XXX) XXX-6094 (the 6094 number) and (XXX) XXX-4893 (the 4893 number). Investigators later learned that the 6094 number and the 4893 number were telephone numbers for Esvin Ivan CALLES-CORRALES. On December 1, 2022, there were 10 wire and electronic communications between Drew and CALLES-CORRALES.

CALLES-CORRALES' phone number listed to a person herein identified by the initials "L.L." at an identified address pm McDowell Road in Avondale, Arizona. Further investigation revealed that CORRALES and his associates had sent numerous wire transfers to Mexico.

Additionally, on January 30, 2023, another parcel – Subject Parcel 3, was mailed to DREW's address at the direction of Calles CORRALES at the Avondale, Arizona Post Office. That parcel was not interdicted and was picked up by Drew. Subsequently, on March 22, 2023, agents identified another parcel which had been mailed to DREW at the direction of CALLES-CORRALES. Like the January 30th parcel, the March 22nd parcel was not interdicted by law enforcement.

Through various investigative means, agents obtained chat conversations between Drew and "Polo" (CALLES-CORRALES) using the 4893 number. Chat conversations between October 19, 2022, and October 25, 2022 involved Drew's purchase of fentanyl pills and other narcotics from CALLES-CORRALES. For example, between October 19, 2022, and October 25, 2022, the following discussion took place between Drew and CALLES-CORRALES:

-DREW: Yo
-DREW: Wassup
-CALLES-CORRALES: Ima get on it
-DREW: Xavier Drew [Aurora Address for Drew redacted]
-DREW: Keep me up date gang need em fr
-CALLES-CORRALES: Yo my cuz is about to send that today iñl make sure he sends you the ifno oneced its done
-DREW: Ok bet

A review was conducted of Esvin Calles-Corrales' Block Inc. (Cash App) business records. That review confirmed that between November 28, 2022 and November 29, 2022, DREW paid Calles-Corrales $1,500 in United States Currency.

On June 9, 2023, investigators executed a federal search warrant on CALLES-CORRALES' residence in Arizona. From the residence, agents recovered items attributable to CALLES-CORRALES, including 2 handguns, a semi-automatic shotgun, a ballistic vest and

8

suspected methamphetamine. The firearms included a Springfield Armory .45 semi-automatic handgun which had been reported stolen. The suspected methamphetamine field tested positive for the presence of methamphetamine and had a weight of approximately **49.22 grams**.

The parties agree that there is no known evidence to indicate that CALLES-CORRALES traveled to Colorado during the course of this investigation. As part of his guilty plea, CALLES-CORRALES admits that he possessed the seized firearms during portions of the conspiracy, as alleged in the Superseding Indictment. He further admits that he knew or reasonably should have known that DREW was re-selling the drugs that were mailed to him to criminal street gangs. The parties stipulate that there is no evidence to indicate that the firearms which were seized from CALLES-CORRALLES were possessed in proximity to the parcels containing drugs that were mailed from Phoenix to Denver.

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

    a)    Pursuant to U.S.S.G. § 2D1.1(c)(4), the parties agree that the base offense level is **32** (3,000 – 10,000 CDW).

    b)    Pursuant to U.S.S.G. § 2D1.1(b)(1), the government asserts that a two-level enhancement applies because a dangerous weapon was possessed.

    c)    The parties agree that enhancements related to: role, importation, and/or maintaining a premises are inapplicable.

9

d) Provided the defendant does not engage in prohibited conduct or otherwise implicate U.S.S.G. §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a **two-level** reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a **one-level** reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b).

e) Based on the calculation of the parties, the Total Adjusted Offense Level is **31**.

f) The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category I.

g) The parties do not anticipate that the career offender/criminal livelihood/armed career criminal adjustments will apply.

h) With an anticipated Total Offense Level of 31 and a Criminal History Category of I, the estimated advisory guideline range is 108-135 months' imprisonment. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level could conceivably result in a range from 108 months (bottom of Category I) to 235 months (top of Category VI).

The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

i) Pursuant to guideline § 5E1.2, assuming the estimated offense level is 31, the fine range for this offense would be $30,000 to $10,000,000, plus applicable interest and penalties.

j) Pursuant to 21 U.S.C. 841(a)(1) and (b)(1)(A), there is a 5-year mandatory minimum term of supervised release, and up to a lifetime of supervision. Pursuant to U.S.S.G. § 5D1.2, the advisory guideline range for a term of supervised release is 5 years.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the

10

advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 11/13/2023

ESVIN IVAN CALLES-CORRALES
Defendant

Date: 11/13/2023

John Tatum
Attorney for Defendant

Date: 11/13/2023

Bradley W. Giles
Assistant U.S. Attorney